A. H. WINDER, APPELLANT, V. MARY J. WINDER, APPELLEE.

FILED APRIL 9, 1910.   No. 15,979. ·

1. Judgment: VACATING DURING TERM.  The district court has power to set aside a judgment or decree during the term at which it was rendered, if satisfied that it has been procured by fraud or collusion, or if it believes that its former conclusion was erroneous.

2. ———: ———: PRESUMPTIONS.  On the 15th day of May a written order was filed adjourning the district court for Madison county from May 18, 1908, which was the day at which the May term had at the beginning of the year been designated to begin, to May 20 at 1 o'clock P. M., and on that day a written order signed by the judge was made adjourning the May term from May 20 to May 21.  On May 20 a hearing was had upon a motion to vacate a decree of divorce rendered during the February term. Since the record does not indicate the hour of the proceedings, regularity must be presumed, and the hearing and order will be held to have been had and made during the February term as the record recites.

3. Divorce: COLLUSION: VACATING DECREE.  Where parties to a divorce proceeding agree that material evidence shall be suppressed, and that the actual facts in the case shall be concealed from the court for the purpose of procuring a decree which would not otherwise be granted to the complainant, such action is collusive in nature, and a court is warranted in setting aside a decree thus procured.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE.  *Affirmed.*

*Mapes & Hazen,* for appellant.

*John W. Cooper, contra.*

LETTON, J.

In January, 1908, the plaintiff began an action for divorce against his wife in the district court for Madison county.  On February 10, 1908, a decree was entered in favor of the plaintiff granting an absolute divorce.  On April 6, 1908, a motion to set aside the decree was filed

by the defendant, accompanied by an affidavit in support of the motion. Notice was served on April 20 that on May 18, 1908, the defendant would call the motion to vacate the decree for hearing. Objections were filed to the vacation of the decree, and the defendant filed a supplemental answer to the petition. The record recites that on the 20th day of May, 1908, "the same being a judicial day of the February, 1908, term of the district court holden within and for Madison county, Nebraska," the motion was argued and submitted to the court, and the court overruled the same. The record then recites that, it further appearing to the court from the evidence introduced on the hearing of the motion that the petition in this case was filed by collusion between plaintiff and the defendant, it was ordered by the court on its own motion that the decree of divorce and judgment for alimony is hereby set aside, and that the cause be dismissed at the cost of plaintiff. From this order the plaintiff appeals.

The certificate of the clerk of the district court recites that the February, 1908, term of the district court was begun on the 10th day of February, 1908, and adjourned from day to day and from time to time until the 20th day of May, 1908, when said term of court was adjourned *sine die;* and that the May, A. D., 1908, term was begun on the 21st day of May, 1908.

The appellant contends that the court had no jurisdiction to set aside the decree, for the reason that the term of court at which it was rendered had passed. The record shows that at the beginning of the year 1908, in conformity with the requirements of the statute, the district judge designated February 10, 1908, as the day upon which the February term of the district court for Madison county should begin, and May 18, 1908, as the time at which the May term should begin. On the 15th day of May there was filed with the clerk of the district court a written order dated at Wayne, Nebraska, and signed by the judge, adjourning the court from May 18, 1908, to May 20, 1908, at 1 o'clock P. M., and on the 20th day of

May a written order signed by the judge was entered adjourning the May, 1908, term of the district court from May 20, 1908, to May 21, 1908. The motion to open and vacate the decree of divorce was filed in April during the February term of court. Before the hearing, by written order as provided by section 4741 Ann. St. 1909, the May term was adjourned from May 18 to May 20, at 1 o'clock P. M. This was within the power of the court, and will be presumed to have been done upon sufficient reason. *Parrott v. Wolcott,* 75 Neb. 530; *Russell v. State,* 77 Neb. 519.

The court entered upon the hearing of this motion upon the 20th of May. On that day the May term was again adjourned by written order until the 21st. The record does not indicate the hour at which the hearing began, and, in the absence of proof, regularity must be presumed. The judgment in this case, if made before 1 o'clock P. M. on May 20, was made before the time to which the first order adjourned the May term; if made after 1 o'clock, we must presume it was made after the second order adjourning the term until the 21st. In either event, it was made before the May term began, and must have been made, as the record recites, on a day of the February term. This being the case, the court had power to set aside the decree during the term, if satisfied that it had been obtained by fraud or collusion; or if it believed that its former conclusion was erroneous. *Bradley v. Slater,* 55 Neb. 334; *Colby v. Maw,* 1 Neb. (Unof.) 478.

Does the evidence justify the finding of the district court that the decree had been obtained by collusion. The plaintiff and his wife were married in 1891. Four children, the oldest being 14 years of age and the youngest 2 years old at the time of the divorce, were the fruit of their union. The family had resided in Norfolk, Nebraska, for over ten years, when in April, 1905, Mr. Winder purchased a house in Boulder, Colorado, and occupied the same with

his wife and family from that time until September or October, 1907. His occupation was that of traveling salesman, although he owned an interest in an incorporated boot and shoe business in Norfolk. After the family moved to Colorado Winder continued to spend a large part of his time in Norfolk, and to vote there, and was interested in the business the same as before. When in town he occupied a room in the house in which the family had formerly lived, and into which house one Haley and his wife, Laura S. Haley, had moved.

In September, 1907, he filed a petition for divorce against the defendant in the district court in Denver, Colorado, alleging extreme cruelty. An answer was filed to this petition, and application made for suit money, alimony, and counsel fees, but before a hearing was had, on the 11th day of October, 1907, he dismissed the case. In the latter part of December, 1908, Mrs. Winder consulted Mr. Tyler, an attorney at Madison, Nebraska, with a view to beginning an action for separate maintenance. In a casual conversation between Mr. Mapes, the plaintiff's attorney, and Mr. Tyler in December, 1907, it was disclosed that Mr. Winder had recently consulted Mapes as to a divorce, and that Mrs. Winder had consulted Tyler. This led to a number of conferences between the attorneys and consultation by them with their clients with reference to the matter of alimony, the custody of the children, and the distribution of the property, and, as Mr. Tyler testifies, "It was later arranged and understood that Mr. Winder should make application for divorce, we insisting on terms as to alimony and the disposition of the property and maintenance and education of the children." After an understanding was reached as to these matters and the same had been explained to Mrs. Winder by her counsel, a petition was filed on January 16, 1907, containing substantially the allegations of the Denver petition as to extreme cruelty. A summons was issued, service accepted by Mrs. Winder, and a general denial filed on the same day, which was February 10, the first day of

the February term of the district court. A hearing was immediately had, Winder and one Reid testifying, and the divorce was granted and alimony and custody of the children decreed as had been agreed upon by the parties. Mrs. Winder was present in Madison, but did not attend the trial.

We cannot in the limits of this opinion relate all the facts disclosed by the record. In a lengthy affidavit Mrs. Winder says, among other things, that at this time and for a long time previously she had been in poor health, weak, nervous, and easily influenced; that Winder always had a very strong influence over her, and that by reason of this influence he persuaded her to refrain from making any defense to his petition for divorce. A letter is in evidence from Mrs. Winder to Mr. Tyler, dated January 16, the day the petition was filed, asking with reference to the security agreed upon, and in this letter she states: "Please to not mention to Mr. Mapes that my father said this, as I promised Mr. Winder I would not tell him." In another letter written to her children in Chicago she says: "Now, I am going to give your father a divorce, and he is to support you children," etc. Mrs. Winder's affidavit further states that the decree was obtained through fraud and deception practiced upon the court and the affiant; that the grounds alleged were false and untrue; that it was procured by false and perjured testimony; that, instead of she being cruel to the plaintiff, he had been for a long time guilty of extreme cruelty toward her. She sets forth a number of specific acts constituting, if true, such extreme cruelty as to warrant a decree of divorce to her instead of to her husband, as well as a general charge of improper conduct with Mrs. Haley. She states that after he began to room at the house of Mrs. Haley he systematically schemed to annoy, harass, and torment her, and insisted and urged upon her that she should seek and obtain a divorce and separation; that while in Colorado he repeatedly urged her to obtain a divorce there, and that upon her refusal to do so he began

the divorce suit in Colorado; that after she came back to Nebraska the plaintiff, knowing her ignorance and inexperience and her frail mental and physical condition, urged and persuaded her to permit him to obtain the decree of divorce in this case without making any resistance; that she did not understand the import of the divorce proceedings, had not heard or read the petition until after the decree, and that she did not understand her rights or she would have been present at the hearing and heard in her own defense. An affidavit also appears of a physician in Chicago to the effect that from November 12 to December 13, 1907 he treated her professionally; that she was in such a nervous and physical condition that she was susceptible of being easily influenced, and that in his opinion this condition has existed for several years.

Winder testifies that early in December he saw Mrs. Winder in Norfolk just before he spoke to Mr. Mapes about the matter. He denies that he tried to induce her to allow him to get a divorce, or that he saw her again until after the decree. He testifies that he has paid her $300 and taken care of the three children in Chicago, and denies the specific allegations of cruelty in Mrs. Winder's affidavit. He denies that he ever suggested divorce, and says that she suggested it several times. He testifies that after Mrs. Winder had an operation performed in a Denver hospital in the fall of 1907 he told her he would give her $75 a month out of the store—"Take this $75 and spend it on yourself, and let me and my business alone, and don't bother me any more, and when you get ready for a divorce you can get it." It is also shown that on March 24, six weeks after the rendition of the decree, Mrs. Haley, who in the meantime had procured a divorce from her husband, and Winder were married at Superior, Wisconsin.

It is our opinion from the evidence that Mrs. Winder's property rights were amply protected by her counsel, and that in the adjustment of the property and custody of the

children Mr. Tyler acted with a proper regard to the interests of his client, and obtained a settlement in all probability more advantageous to her, considering the extent of Mr. Winder's estate, than she would have received at the hands of the court, if she had succeeded in an action for separate maintenance. We are also convinced that her rights were fully explained to her by Mr. Tyler and that she was in nowise deceived or misled by him.. The correspondence in evidence between her and her attorney does not tend to substantiate, but rather contradicts, the statements in her affidavit as to her weak -mental condition at the time. A reasonable conclusion would seem to be that Winder was infatuated with Mrs. Haley, and desired a divorce so that he could marry her; that he endeavored to get rid of Mrs. Winder by the divorce proceedings in Colorado, but, not succeeding as easily as he had anticipated, he took up the attempt again in Nebraska; that, when he discovered through his attorney that Mrs. Winder desired a separation, he attempted to buy his peace by surrendering a large portion of his property; that Mrs. Winder agreed to the plan and was cognizant of the proceedings. All this was concealed from the district judge, and, when it became apparent to him through evidence taken on the motion to set aside the decree, he naturally and properly felt that the court had been deceived and imposed upon, and that he would not have rendered such a decree had all the facts in the case been produced in evidence before him at the time. We are of opinion that he was justified in finding as he did. There can be no doubt but that where parties to a divorce proceeding agree that material evidence shall be suppressed, and that the actual facts in the case shall be concealed from the court for the purpose of procuring a decree which would not otherwise be granted to the complainant, such action is collusive in nature, and a court is warranted in setting aside a decree thus procured. 2 Bishop, Marriage, Divorce and Separation, sec. 697-701; *Beard v. Beard*, 65 Cal. 354, 4 Pac. 229; 14 Cyc. p. 647,

subd. 3c, and cases cited in note. Section 5331, Ann. St. 1909, provides: "No divorce shall be decreed in any case when it shall appear that the petition or bill therefor was founded in or exhibited by collusion between the parties nor where the party complaining shall be guilty of the same crime or misconduct charged against the respondent." This statute has been rigidly enforced whenever its provisions have been involved. *Wilde v. Wilde*, 37 Neb. 891; *Cummins v. Cummins*, 47 Neb. 872; *Davis v. Hinman*, 73 Neb. 850. Proper regard for the dignity and respect due to the court requires that it should emphatically frown upon such agreements. This is more especially so in divorce cases, where the public constitutes a third party. The preservation of the family, upon which our whole social fabric rests, and the welfare of innocent children require that the bonds of matrimony shall not be set aside by an agreement between the parties.

If, when the true facts are disclosed, the court is satisfied that it was deceived and misled in rendering the decree, it has full power to set the same aside at the same term of court, and under certain conditions, even at a subsequent term. *Wisdom v. Wisdom*, 24 Neb. 551; *Olmstead v. Olmstead*, 41 Minn. 297; *Bomsta v. Johnson*, 38 Minn. 230.

We have little reluctance because of the new marriage. Apparently Mrs. Haley and Winder were *in pari delicto*, and neither party is entitled to particular favor or protection from the court.

The district court was justified in setting aside the decree, dismissing the case, and leaving the parties where it found them. Its judgment, therefore, is

AFFIRMED.

BARNES, J., not sitting.