JOHN EVERSON, APPELLANT, v. IVA M. EVERSON, APPELLEE.

FILED OCTOBER 13, 1917.   No. 19230.

Divorce: DECREE: VACATION: FINAL ORDER. An order made by the trial
   judge in divorce proceedings after the term when a divorce decree
   was entered, but within six months of its date, sustaining a mo-
   tion asking the vacation of the decree because of mistake and in-
   advertence, and because of alleged fraud and deceit upon the
   part of the plaintiff, is not a final order, and is within the ju-
   risdiction of the court.

APPEAL from the district court for Harlan county:
HARRY S. DUNGAN, JUDGE.  *Appeal dismissed.*

*Bernard McNeny, J. G. Thompson* and *Flansburg &
Flansburg,* for appellant.

*O. E. Shelburn* and *L. H. Blackledge,* contra.

CORNISH, J.

On August 5, 1914, plaintiff (appellant) obtained a
decree of divorce.  At the second term of the court there-
after, but within six months, the trial judge, on motion
of the defendant stating that the judgment had been ob-
tained by mistake and inadvertence on her part and by
fraud and deceit upon the part of plaintiff, vacated the
judgment and gave defendant leave to answer.  Had the
court jurisdiction to make the order, and is it a final
order reviewable as such in this court?  The question in-
volves the construction of section 1606, Rev. St. 1913
(enacted in 1909), which reads as follows:

"A decree of divorce shall not become final or operative
until six months after trial and decision except for the
purpose of review by proceedings in error or by appeal
and for such purposes only, the decree shall be treated
as a final order as soon as rendered: Provided, if pro-
ceedings in error or by appeal shall have been instituted
within said six months, such decree shall not become
final until such proceedings are finally determined.  If no
such proceedings have been instituted, the district court

101 Neb. — 45

may, at any time within said six months, vacate or modify its decree, but if such decree shall not have been vacated or modified, unless 'proceedings are then pending with that end in view, the original decree shall at the expiration of six months become final without any further action of the court."

The legislative intent was to prevent certain practices which it was thought were becoming scandalous to the state. Divorced persons would go into a neighboring state and marry again within the six months' time allowed for appeal. The divorce decree being final; the state had no adequate preventive ready, and serious results to individuals sometimes followed. It was thought that the law would tend to prevent collusive and illegal divorces and illegal marriages. It sought to make more likely the re-establishment of the home and less likely the taking advantage of the state or the injured party who may have been misled or overreached. A penal provision, making such remarriage punishable as bigamy, was repealed at the time.

The trial courts, we believe, have generally construed the law to mean that during the six months' period the action is still pending before the court; that the trial court has power over it similar to that which trial courts have always exercised over their judgments during the term; that it is not a final order in any sense except for the purposes of appeal, but more in the nature of an interlocutory order which the court can, at any time, for good reason, vacate or modify. We are of the opinion that this construction is consistent with the language of the statute, and that the enactment is within the legislative power fixed by the Constitution. It follows that the court's order upon the motion was one which the court had jurisdiction to make, and was not a final order from which appeal can be taken.

At the hearing on the motion it was contended by plaintiff that the motion should be overruled, among other reasons because the defendant, having notice of the trial, made no appearance, and because afterwards she

recognized the decree, procured its modification, and in other ways acquiesced in the decree.  To what extent such acts upon her part would operate as an estoppel against her to prevent a vacation of the decree is not decided.  No doubt the general rule is that parties to a lawsuit are not permitted to take inconsistent positions or positions which merely tend to harass and annoy or mislead their adversary.  We do not at this time decide whether the court's order was erroneous.

For the reasons above given, the appeal is dismissed and the cause remanded for further proceedings according to law.

DISMISSED.

HAMER, J., dissenting.

While I am not quite sure of my position, yet I am quite clear that the majority opinion is wrong.  I dissent because the record, as I understand it, fails to show the right of this court to make the order dismissing the appeal.

The petition filed August 5, 1914, alleged the marriage of the plaintiff and defendant at Augusta, Maine, August 25, 1894, and their residence since that time at Alma, Nebraska; that, while the plaintiff had conducted himself toward the defendant as a faithful and considerate husband, the defendant, beginning about three years after said marriage, had been guilty of extreme cruelty toward the plaintiff, continuing, with slight variations, up to the time of filing the petition; that such cruelty consisted at times of physical violence, which is accurately described, but the defendant appears to have frequently alluded to the plaintiff as a person of low and vulgar ideals, and she would call him an ignorant foreigner, and would refer to his family in derogatory terms; that the homestead stood in the name of the defendant, and she would order the plaintiff to get out of the way and leave; that she would say to the plaintiff to get his divorce and get out of her house and to stay out of it; that she habitually nagged the plaintiff and belittled him; that she would absent herself from the home for long periods of time;

that when she was at home she gave frequent exhibitions of ungovernable temper without cause and made the home life of the plaintiff intolerable.

The journal shows that the cause came on for trial on the 9th day of November, 1914; that the case was heard before the court, and that the plaintiff was present, but "the defendant came not and her default is taken." After hearing all the evidence in the case, the court rendered a decree November 9, 1914, in which it found that there had been due service of summons; that the defendant had made default; that "the court finds generally for the plaintiff." The court "adjudged and decreed * * * that the marriage relation heretofore existing between the parties hereto be, and the same hereby is, set aside and annulled, and the parties are released from the obligations of the same." The decree provided that the "defendant be restored to her maiden name, Iva M. Haskell."

The record shows that on the 18th of November, 1914, the November, 1914, term of said court, at which the judgment was rendered, adjourned *sine die.* December 16, 1914, the defendant, Iva M. Everson, by her attorney, O. E. Shelburn, filed a motion to modify the decree. If the allegations in the petition were true, and the decree found them to be true, it might be expected that she would want the decree set aside or in some way modified so that it did not appear that she had done the violent things to her husband charged in the petition, and that she had not said the unkind things to him charged against her. The decree found the allegations of the petition to be true. The defendant had counsel and it was his duty to advise her of her rights. Presumably he did so. There is no claim that he did not. The motion filed "requests that she be allowed to retain her name of Iva M. Everson." The plaintiff consented to the request. The order modifying the decree reads: "The court being fully advised in the premises finds that said decree should be modified by striking out that part of the decree which re-

stores to the defendant her maiden name of Iva M. Haskell." This left her with the name of Iva M. Everson.

The next step appears to have been taken on January 13, 1915, and was taken at "the December, 1914, term of said court." The decree was taken November 18, 1914, and the court adjourned *sine die*. On the 16th day of December, 1914, the above motion to modify the decree was filed. She was then advised of the contents of the decree. If she consented to leave the decree stand except as to the matter of changing her name, she must be bound by what she did, and she must be deemed to have acquiesced in the decree as it then stood. She left the decree with herself adjudged as guilty of extreme cruelty charged against her. The specific acts of violence charged against her and her cruel language were not in any way questioned or denied.

But with this record standing as true she went into court on the 19th day of March, 1915, and filed a new motion. She then said that she "in good faith believed the plaintiff would abandon said claimed cause of action and would not further proceed with the matter." Her default had already been taken and judgment had been rendered against her establishing the allegations of the petition to be true, and she had acquiesced in the judgment when she had it modified. Is her contention reasonable?

John Everson made what he called a special appearance to this last application. He gave the following as reasons why the motion should not be granted: "(1) Final judgment was entered in said action on personal service on November 9, 1914, at a regular term of this court, which term adjourned without day on November 18, 1914. (2) Defendant at the regular December, 1914, term of this court requested and obtained a modification of said decree, with written consent of plaintiff, and said December term adjourned without day on January 13, 1915. (3) Said judgment and final orders of this court are in full force and effect, no appeal has been

taken therefrom, and this court is without jurisdiction in the premises."

On the 6th day of May, 1915, the cause came on to be heard on the motion of the defendant to set aside the default and the decree against her, and that she be allowed to answer and defend, and on that same day the term adjourned without day. On May 28, 1915, the plaintiff filed in the office of the clerk of said court a notice of appeal "from the order and judgment of the district court made in the above entitled cause on April 1, 1915, overruling a special appearance herein, and also from the order and judgment of said court made in said action on May 6, 1915, where the decree entered on November 9, 1914, was attempted to be set aside on motion of defendant."

There is in addition to the transcript the bill of exceptions, which contains no testimony taken at any trial. It consists only of an affidavit by Iva M. Everson, and another affidavit by John Everson. This is the bill of exceptions "at the hearing of the motion of the defendant to set aside the decree of divorce in the above entitled cause."

It is my view that, after the court had made this first modification and had put the name of Iva M. Everson in the decree, then the decree stood as the final action of the court, and that nothing else could be done without commencing a case against John Everson in the regular way. There was no new petition and no new summons, and therefore there was no jurisdiction.

Section 1606, Rev. St. 1913 (enacted in 1909) provides: "A decree of divorce shall not become final or operative until six months after trial and decision except for the purpose of review by proceedings in error or by appeal and for such purposes only, the decree shall be treated as a final order as soon as rendered: Provided," etc. By the section the decree becomes final for the purposes of review "as soon as rendered." When the case was tried the evidence was not preserved in a bill of exceptions. The bill of exceptions we have here contains two affi-

davits and is on the hearing of the special appearance and motion to dismiss the appeal. This court by a dismissal of the case would seem to leave the plaintiff without a remedy. There should have been a trial in the district court if the case was still alive in it. If the case was not alive nothing remained to be done. The trouble arises because one class of decrees is to be considered and treated entirely in a different manner from every other class of decrees. Section 1606, Rev. St. 1913, does not repeal the original provisions with regard to vacating judgments after the term. It follows that they are still in force.

In *Schafer v. Schafer*, 71 Neb. 708, this court said: "It is probably true that parties may marry again after six months from the date of the decree, if no error or appeal proceedings have been commenced; but there is no doubt that in so doing they must take their chances on having the decree vacated upon a proper application under the provisions of section 602 (Rev. St. 1913, sec. 8207). * * * Repeals by implication are not favored, and a construction which results in an implied repeal of some other enactment should only be resorted to when made necessary by the evident intent of the legislature."

It is apparent from the foregoing language that this court considers that section 602 of the Code is still in force, and that it has not been repealed.

The property in this case appears to have been divided according to the satisfaction of the parties. As the record showed that the defendant had procured the modification of the decree according to her liking, I am unable to understand why the judgment should be set aside and the appeal dismissed. I think it error of this court to set aside the judgment when there was no evidence before the district court which tended to show a different state of facts from those contained in the decree. The violence of the defendant toward the plaintiff and her cruel and abusive remarks to him were not denied by her. She comes before the court adjudged to be guilty and pro-

duces no evidence to set its judgment aside. It was error to dismiss the appeal.

The affidavit of John Everson tells a story which should be studied by every member of this court. It tells of devotion to the interests of the defendant and an untiring industry by the plaintiff on behalf of the defendant and her uncle, William Gaslin. It tells how John Everson made them prosperous and rich while he himself suffered in silence and alone. The record shows that the defendant never wanted John Everson until she wanted to punish the other woman.