LOUISE K. DUDGEON, APPELLANT, V. JOHN E. DUDGEON, APPELLEE.

5 N. W. (2d) 133

FILED JULY 31, 1942. No. 31409.

*Henry F. Pedersen* and *Gross & Crawford,* for appellant.

*Cranny & Moore, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ., and ELLIS, District Judge.

ELLIS, District Judge.

This is an appeal by plaintiff wife from the action of the district court denying her application to set aside a decree of that court granting her an absolute divorce.

The chronology of the proceedings in the district court is as follows:

July 29, 1940, plaintiff filed petition alleging cruelty and praying for absolute divorce, custody of adopted minor child and other relief.

September 3, 1940, defendant filed answer.

September 16, 1940, plaintiff filed motion to amend her petition by changing prayer from one for absolute divorce to prayer for separate maintenance.

September 30, 1940, defendant filed cross-petition alleging cruelty and praying for divorce.

October 4, 1940, amended petition was filed but is missing from files and does not appear in transcript.

November 1, 1940, by consent of parties petition and amended petition of plaintiff and cross-petition of defendant were dismissed without prejudice.

January 22, 1941, an order was entered reciting that on motion of plaintiff and defendant the order of November 1, 1940, was vacated and set aside and that the case proceed to trial on the *original* petition and the *original* answer.

January 22, 1941, the plaintiff appeared in person and by her counsel and defendant appeared by his counsel. Plaintiff presented evidence and was granted a divorce. It appears that the parties had agreed upon a division of property, child support and alimony and this agreement was incorporated in the decree. A transcript of the testimony presented at this hearing is included in the bill of exceptions and from that it appears that plaintiff's only complaint against the defendant was based on his conduct and relations with other women.

June 3, 1941, plaintiff filed a verified motion to vacate the decree. In this motion plaintiff alleged that at the time of the revival of the action she was in a highly nervous state of mind and by threats and misrepresentations of the defendant she was influenced and prevailed upon to revive the action and obtain a divorce; that at and prior to that time the defendant represented to the plaintiff that, notwithstanding the taking of the decree, he would consider himself the husband of the plaintiff and that plaintiff could and would have the right to vacate the decree at any time; that the taking of the decree would improve his health and unless taken his general and mental condition would be such that he would have to leave Omaha for parts unknown; that if he did so great loss would result to plaintiff and their minor child; concealment by defendant of his financial condition; that plaintiff because of love and affection for the defendant had a desire to assist and help him, was apprehensive of defendant's condition and desired protection for their minor child; that plaintiff, believing the representa-

tions and promises of the defendant, did in cooperation with defendant and his attorney revive said action and obtain a divorce.

The plaintiff further alleged that subsequent to the decree the defendant on many occasions had professed great love and esteem for plaintiff; had reminded her that he was still her husband; that she could set the decree aside at any time before the same became final; that his involvement with another woman had been rectified; that plaintiff was the only object of his affection; and that defendant had cohabited with plaintiff during February and March, 1941.

To the plaintiff's motion the defendant filed an answer amounting, in substance, to a general denial.

At the hearing on September 11 and 16, 1941, upon the issue thus created the plaintiff offered testimony to support the allegations of her motion as to the conduct of the defendant prior to the taking of the decree and constituting the inducement to her action in obtaining that decree. Objections to this evidence were sustained. Plaintiff made an offer of proof sufficient to support her exception to the ruling and likewise tending to support the allegations of her motion.

On this ruling we think the trial court was in error. Aside from the allegation of cohabitation after the decree, the gist of plaintiff's application was misrepresentation, fraud and duress occurring and existing at and prior to the taking of the decree. These things could not be established by evidence alone of what transpired after the decree. Unless the plaintiff be permitted to introduce evidence of what transpired between the parties before the decree she was doomed to defeat upon this phase of her application. We think that plaintiff's application alleged grounds for setting aside the decree and therefore it was prejudicial error to exclude competent evidence offered in support of such allegations. To hold otherwise would in effect close the door against practically all actions to vitiate decrees based in fraud or duress.

Since the trial court indicated an opinion that the plaintiff could have no right in any event to set the decree aside

and the parties have presented this question to this court, we deem it not only proper but necessary to discuss this basic question.

From a factual standpoint the case seems to be one of first impression in this jurisdiction and we must, therefore, turn to fundamental principles.

"The state, or public, has an interest in the marital status, its continuance, and its dissolution. The court cannot require a party to procure or to consent to a divorce, either ecclesiastical or civil; rather, it is conceded in all jurisdictions that public policy, good morals, and the interests of society require that the marriage relation should be surrounded with every safeguard and its severance allowed only in the manner and for the causes specified by law. Thus divorce is not favored or encouraged, but is discouraged; the husband and wife are not the only parties to a suit for divorce, but the state, or the public, is considered to be impliedly a party, whose interests should be considered and must be protected by the court." 27 C. J. S. 527, sec. 8.

That the foregoing reflects the underlying philosophy of the law of this state is demonstrated by the pronouncements of this court in the following cases:

For a declaration of the public policy of this state see *State v. Crocker,* 132 Neb. 214, 271 N. W. 444.

*Lippincott v. Lippincott,* 141 Neb. 186, 3 N. W. (2d) 207: While in the *Lippincott* case the wife challenged the validity of a prior decree which she obtained as plaintiff in the court of another state and sought to avoid it on the ground of fraud in invoking the jurisdiction of the foreign court, it none the less illustrates the length to which the courts will go in protecting the innocent spouse and the public interest in the marital relation. Incidentally, this case fully disposes of defendant's contention in the principal case that plaintiff is estopped to attack the decree which she obtained.

In *Winder v. Winder,* 86 Neb. 495, 125 N. W. 1095, the husband as plaintiff, and in fact the offending party, obtained a decree. Within 60 days the defendant wife filed a motion to set aside the decree. She had been represented

by counsel, and while this court found that her property rights had been amply protected, that the property settlement had probably been more advantageous to her than she would have received at the hands of the court, and that the evidence did not support her claim of weak mental condition, it nevertheless approved the action of the trial court in denying her application and in setting aside the decree on its own motion. This was done in the face of the plaintiff husband's remarriage. "Proper regard for the dignity and respect due to the court requires that it should emphatically frown upon such agreements. This is more especially so in divorce cases, where the public constitutes a third party. The preservation of the family, upon which our whole social fabric rests, and the welfare of innocent children require that the bonds of matrimony shall not be set aside by an agreement between the parties."

In *Blakely v. Blakely*, 102 Neb. 164, 166 N. W. 259, the action was brought by the husband. The wife entered her voluntary appearance but did not defend. Plaintiff was granted a divorce and paid in cash $2,000 of the permanent alimony granted to defendant. Within six months defendant first filed a motion to vacate that part of the decree relating to alimony and then a petition to vacate the decree on the grounds of misrepresentation by the plaintiff of the amount and value of his property and other facts alleged to amount to duress. The trial court struck defendant's amended petition and dismissed the proceeding. This was held to be reversible error and the court said that the application to set aside the decree should have been granted. "In the very recent case of *Everson v. Everson*, 101 Neb. 705, this court construed section 1606, Rev. St. 1913, 'to mean that during the six months' period the action is still pending before the court; that the trial court has power over it similar to that which trial courts have always exercised over their judgments during the term; that it is not a final order in any sense except for the purposes of appeal, but more in the nature of an interlocutory order which the court can, at any time, for good reason, vacate or modify.'"

It may be noted that section 1606, Rev. St. 1913, continues to exist unchanged as section 42-340, Comp. St. 1929. It should also be noted that this section stays the automatic finality of a divorce decree at the expiration of six months where proceedings for vacation or modification are then pending.

In *Carmony v. Carmony*, 112 Neb. 651, 200 N. W. 830, the defendant wife was granted a divorce on her cross-petition. Within six months she presented proof of the remarriage of her husband and the court set aside the decree. This appears to have been done *ex parte*. This action of the trial court was affirmed and this court said: "Under the divorce statute (Rev. St. 1913, sec. 1606) providing that a decree of divorce shall not become final or operative until six months, except for the purpose of review, and that the 'district court may at any time within said six months, vacate or modify its decree,' the court had the same power, after the term and before the six months had expired, to set aside the decree as it formerly had during the term before the enactment of this statute."

The foregoing would seem to demonstrate the underlying philosophy of the public policy and law of this state with reference to the marital relationship and its severance. Also a markedly liberal attitude toward applications for vacation or modification of divorce decrees which is peculiar to this particular class of judgments and obviously a departure from the rules applicable to judgments in general.

In *Lake v. Lake*, 124 App. Div. 89, 108 N. Y. Supp. 964, it is said: "The right of a party to the marriage contract to have that contract dissolved by reason of the infidelity of the other party thereto is given as a favor to the injured party. It was never intended to be used as a means whereby the wife should be forced to dissolve the contract. The court, at the request of a wife so desiring, grants a divorce by reason of the infidelity of the husband, but that request must be voluntary. If the wife's request be coerced, if the judgment be obtained upon a request of the wife, which she has been forced to make, that judgment should be set aside

by the court which granted the same. The statement of the proposition would seem to be sufficient to its establishment. If aught else be necessary, however, the mischief that would follow any other rule would make such a holding imperative. If any married man can by coercion force his wife to procure from him a divorce that he may marry another woman, ōr for any other purpose, the insecurity of that relation becomes at once apparent, and the legislature might better change the rule and grant divorces on request simply than to leave wives subject to coercion, which would be practiced upon them in order that the husband may get his freedom. Where, therefore, it appears to the court that the wife's application has not been free and unrestrained, the judgment of divorce should be annulled."

The Colorado court has held: "Where the court granted an interlocutory decree of divorce to the wife, thereby adjudging her an innocent party, she is entitled to have the decree set aside on her motion without evidence, since to deny such a motion would be to force the innocent party to take a divorce against her will." *Willoughby v. Willoughby*, 206 Pac. 792 (71 Colo. 356). In this case there was a contract or stipulation between the parties with reference to property and the husband contended the purpose of his wife's motion was to get more money out of him rather than to effect a reconciliation. With reference to this the court said (71 Colo. 356) : "The dissolution of the marriage is no part of the contract. The contract would be unlawful if it were. It is a separate matter. * * * Were we to hōld otherwise we should sanction the purchase of a divorce, which, however often it be done covertly, is a violation of law, public policy and decency."

With reference to contracts intended to facilitate procuring of a divorce this court said in *Davis v. Hinman*, 73 Neb. 850, 103 N. W. 668: "Any contract having any such purpose, object or tendency cannot be sustained, but must be regarded as being against sound public policy, and consequently illegal and void. The marriage relation is one to be encouraged and maintained when formed. Such is the well-settled

policy of the law; and its dissolution or determination is not to be left to the caprice of the parties. If dissolved, it must be done in accordance with some positive enactment of law and in due course of judicial proceeding. The good order and well-being of society, as well as the laws of this state, require this."

See, also, *Walton v. Walton*, 86 Colo. 1, 278 Pac. 780, and *Tierney v. Tierney*, 86 Colo. 362, 281 Pac. 737, in which cases it was held that a plaintiff who has obtained an interlocutory decree in a divorce action may not be compelled by a guilty defendant to have a final decree over her objection.

While under the Colorado practice an order is required at the end of the interlocutory period of six months to make the first decree final, whereas under our practice this result happens automatically, the reasoning of the Colorado court appears sound and equally applicable in this state.

The following cases also support the right of the innocent spouse to have an interlocutory decree in his or her favor set aside before the same becomes final solely on the ground of a determination to abandon the proceedings: *Adams v. Adams*, 57 Misc. 150, 106 N. Y. Supp. 1064; *McVickar v. McVickar*, 123 Misc. 644, 205 N. Y. Supp. 834; *Nicolai v. Nicolai*, 283 Mass. 241, 186 N. E. 240; *McLaughlin v. Mc-Laughlin*, 44 R. I. 429, 117 Atl. 649; *Kenner v. Kenner*, 240 App. Div. 713, 265 N. Y. Supp. 137.

The acts of the wrong-doer create in the other spouse the right to relief, but it must be kept in mind that the wronged spouse, having legal grounds for relief, is not bound to assert the same in court either as a plaintiff or as a defendant by way of cross-petition. If the wronged spouse does choose to seek relief, in this state, he or she has a choice between two statutory remedies, *i. e.*, an action for absolute divorce (*a vinculo matrimonii*) or for divorce from bed and board (*a mensa et thoro*), or the plaintiff may resort to the equitable remedy of a decree for separate maintenance. These are rights in the injured spouse, to be selected and exercised in his or her sole discretion. The wrong-doer does not by breach of the solemn obligation of the relationship acquire

the right to compel recourse by the other spouse to any remedy or to dictate which of the three available remedies shall be invoked.

It must also be borne in mind that, if the result of the judicial process is to force the innocent spouse to accept a decree of divorce, the practical result is to grant a divorce to the guilty party to which he or she is not entitled under either the law or good morals.

The defendant cites authorities and argues that, while a divorce decree will be set aside for collusion, this will not be done at the behest of one who procured the decree. Without indicating our agreement or disagreement with this contention, we do not think it has application in the case before us. A desire of both parties for a divorce is not collusion. Neither do acts which merely facilitate proceedings in a divorce case show collusion. Strictly speaking, collusion which is proscribed by our statute and as referred to in the cases consists of an agreement, express or implied, for the suppression of facts or the simulation or fabrication of evidence material to the issue of the existence of lawful grounds for a divorce. See *Winder v. Winder, supra.* There is no suggestion that plaintiff has in any wise been guilty of collusion as thus defined.

In this connection the case of *Hall v. Hall,* 70 Mont. 460, 226 Pac. 469, involved facts very similar to the allegations of plaintiff in the instant case and, notwithstanding some evidence of collusion, the decree was vacated on application of the wife who obtained the decree. The court said: "Conceding that a party to the collusion may not obtain relief as a matter of right, nevertheless, if the court grants the motion, the result is not different from what it would be if the motion were denied and relief granted by the court *sua sponte.*" The accuracy of this observation is reflected in the result of the decision in *Winder v. Winder, supra.*

The reluctance of the law to dissolve the marital relation is reflected in the statutory waiting period of six months. This provision expresses the persisting desire and continuing hope of society for reconciliation. If the prevailing

spouse entertains a hope of reconciliation, as the plaintiff expressed in this case, even though such hope may be a weak and tenuous one, the whole policy of the law, reflecting as it does the public interest, would seem to be opposed to forcing such spouse to forego that hope and accept a divorce against her wishes.

We conclude that in the absence of legal collusion (which the court may meet on its own motion) the prevailing spouse may have a decree of divorce in his or her favor vacated and set aside as a matter of right, if application therefor is made within six months after rendition, unless some unconscionable result would be produced thereby. The application should not be granted *ex parte,* but only upon notice to the other party and an opportunity to be heard.

We do not share the appellee's concern over the effect of this conclusion upon the property interests of the parties. In view of the utter lack of finality of the decree during the six months' period, the possibility of its being vacated for the reasons and under the circumstances appearing in the *Winder* and similar cases, and the ever present possibility of abatement of the action by death with restoration of the rights of the surviving spouse as an heir, we do not think that either of the parties or strangers are likely to be prejudiced by vacation of the decree on application made during the interlocutory period. We think it is, or at least ought to be, the practice for all parties affected or likely to be affected by the decree to hold in abeyance any substantial changes in their personal or business affairs until the decree becomes final by the running of the six months' period.

The court has and should exercise its power upon vacation of a decree to make such orders as may be necessarily incident to the nullification of that part of its decree respecting property interests and for the greatest possible restoration of the parties to the *status quo* existing at the time of the decree.

The cause will be reversed and remanded, with directions to the trial court to afford the defendant a reasonable opportunity to make any further showing that he cares to make

against the application of the plaintiff, and if no unconscionable result of so doing be established, to vacate the decree of divorce and make such other orders as may be appropriate.

Plaintiff is allowed an attorney's fee of $100, to be taxed as costs in this court.

REVERSED.