RICHARD F. SHINN, APPELLEE, v. OPAL SHINN, APPELLANT.
29 N. W. 2d 629

Filed November 14, 1947.    No. 32226.

*Evans & Lee* and *Frank L. Burbridge,* for appellant.

*Schaper & Schaper* and *Carl G. Humphrey,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and THOMSEN, District Judge.

MESSMORE, J.

This is a suit in equity in which the defendant in a divorce action, after decree of divorce was rendered against her and in favor of the plaintiff, filed a petition to set aside such decree after the term at which the same was entered.

The defendant's second amended petition alleged, in substance, that the plaintiff practiced fraud against her and upon the court in procuring a decree of divorce; further alleged that the parties mutually forgave and condoned all wrongs or complaints they had against each other and became fully reconciled, living together in the relationship of husband and wife prior to the date upon which the decree of divorce became absolute; further alleged that the plaintiff promised the defendant that if the parties would live together again as

husband and wife he would forthwith have the decree of divorce vacated and set aside, the defendant believed and relied upon the plaintiff to fulfill his promise to set aside the decree of divorce, and the plaintiff led the defendant to believe that he had done so, thereby perpetrating a fraud upon her and upon the court.

The plaintiff's answer admits that he filed a petition for divorce, a property settlement was made and a decree was procured from which no appeal was taken; further pleads that the decree of divorce has never been vacated nor set aside and is in full force and effect; and denies any fraud on his part against the defendant or upon the court.

After hearing the case the trial court entered a judgment finding in favor of the plaintiff and against the defendant and dismissed her second amended petition. Upon the overruling of motion for new trial, the defendant appeals.

For convenience, the parties will be referred to as they appear in the divorce action and not as appellant and appellee.

This case is before this court on a trial de novo.

It appears from the record that the plaintiff, prior to his marriage on January 1, 1939, to the defendant, was a widower with two minor children. The defendant was his housekeeper. They resided on his turkey ranch. In October 1940, the defendant separated from the plaintiff, giving as her reason for so doing that she was overworked in doing the cooking and washing for the hired men and caring for the children; that the plaintiff refused to take her places and made light of her education, all of which resulted in her becoming nervous and in ill health. Thereafter a property settlement was made between the parties. The defendant filed a voluntary appearance in which she requested the restoration of her maiden name. The plaintiff procured a decree of divorce on April 14, 1941, on the grounds of extreme cruelty. The defendant, after she

left the plaintiff, entered a cosmetology school in Grand Island.

On or about September 12, 1941, prior to the date the decree of divorce would become absolute which would be October 14, 1941, the plaintiff and defendant, after some consultation, decided to again live in the relationship of husband and wife. On September 13, 1941, they returned to the turkey ranch where the defendant assumed her previous duties as a mother and housekeeper. The evidence is in abundance that this relationship continued until May 31, 1945, when the defendant again separated from the plaintiff.

The defendant's testimony is to the effect that the reconciliation was brought about by the promise of the plaintiff to have the decree of divorce set aside; that he would permit the defendant to assist in business transactions, issue and sign checks; would take her on vacations; and build a separate house for the hired help, also employ additional help for her. The defendant further testified that on several occasions in conversations with the plaintiff he agreed to set aside the decree of divorce and, in fact, had attended to setting aside such decree; that she relied upon the representation so made by the plaintiff for the reason that he had always attended to all the family business and she had no reason to disbelieve him.

In conversations had with several parties, it was apparent that the defendant believed that when parties to a divorce action went back together and lived as husband and wife prior to the time the decree of divorce became absolute, such action automatically canceled the decree of divorce.

The plaintiff's testimony is to the effect that he offered to remarry the defendant but she rebelled, and that they agreed to live together without remarriage.

It further appears from the evidence, by the testimony of a witness who at that time was keeping house for the plaintiff, that on September 13, 1941, while she was

in the kitchen waiting breakfast, the bedroom door opened and the defendant and plaintiff came out. The plaintiff introduced the defendant to the witness as his wife. On September 15, 1941, this witness had a conversation with the plaintiff regarding the marriage relationship of the plaintiff and defendant, wherein the witness asked the plaintiff where the marriage had taken place, and he said there was no marriage, that the marriage happened quite a while ago, and the witness replied: "I understand you had a divorce from your wife—from Opal Shinn. He said, 'I did * * * I am going to drop that divorce, I just have about a month to do it in.'" This witness left the plaintiff's employment December 10, 1941. While she was there the plaintiff and defendant treated each other as husband and wife, got along well, and occupied the same sleeping quarters.

The plaintiff offered evidence with reference to other conversations had between certain witnesses and the defendant. One with the wife of the brother of plaintiff's first wife, that in May of 1942, while visiting in the plaintiff's home, she had a conversation with the defendant concerning the divorce decree, wherein she asked the defendant where she and Dick were remarried the last time, to which the defendant replied: " 'We weren't,' * * * 'We didn't have to be,' * * * 'A lot of people don't know that we aren't remarried, but we don't have to be, because we went back together before the six months were final,' * * *." And this witness said: "Are you sure?" and the defendant replied: "Yes, if you go back before the six months was final you don't have to be remarried."

In another conversation with a witness who was in the poultry business with the plaintiff, to the effect that the defendant told her she did not know whether she was married, the witness replied that she thought she was married. This conversation occurred in August 1944.

One of the attorneys for the plaintiff, the attorney who represented him in the divorce action, testified that on June 7, 1945, he had a conversation with the defendant at her sister's home. He asked the defendant if she and the plaintiff had remarried. The defendant replied "No." He asked her if the divorce decree had ever been set aside and she said "No." He asked her why, and she replied that she had always thought that if divorced couples resumed marital relations before six months the decree was automatically canceled. He further testified that during this conversation the defendant made no claim that the plaintiff had agreed to have the decree set aside.

The defendant's version of this conversation is practically the same as related by the attorney, and in addition, that the attorney told her the decree had not been set aside and she did not believe him. She knew nothing further about it until she had consulted counsel in the instant case.

According to the plaintiff's evidence, he believed that it was necessary to remarry in order to resume the relationship of husband and wife. His evidence indicates that he was fully informed by the court at the time he obtained the decree of divorce that he was not privileged to marry until the divorce became absolute.

In considering this appeal, we deem it advisable to restate the public policy of this state with reference to divorce.

In State, ex rel. Hunter v. Crocker, 132 Neb. 214, 271 N. W. 444, this court said: "The public policy of this state, as declared by legislative enactment, is to discourage divorce cases. The state is an interested party. The dissolution of the marriage relation involves a matter of public interest." Similar language is found in Dudgeon v. Dudgeon, 142 Neb. 82, 5 N. W. 2d 133: " 'Thus divorce is not favored or encouraged, but is discouraged; the husband and wife are not the only parties to a suit for divorce, but the state, or the public, is considered

to be impliedly a party, whose interests should be considered and must be protected by the court.' 27 C. J. S. 527, sec. 8." See, also, Faris v. Hope, 298 F. 727. Other cases that denote the underlying philosophy of public policy as reflected in State, ex rel. Hunter v. Crocker, *supra,* are Lippincott v. Lippincott, 141 Neb. 186, 3 N. W. 2d 207; Winder v. Winder, 86 Neb. 495, 125 N. W. 1095; Blakely v. Blakely, 102 Neb. 164, 166 N. W. 259; Carmony v. Carmony, 112 Neb. 651, 200 N. W. 830.

The foregoing cited cases disclose a markedly liberal attitude toward application for vacation or modification of divorce decrees which is peculiar to this class of judgments and obviously a departure from the rules applicable to judgments in general. See Dudgeon v. Dudgeon, *supra.*

With the foregoing authorities in mind, we make reference to section 42-340, R. S. 1943, which provides as follows: "A decree of divorce shall not become final or operative until six months after trial and decision, except for the purpose of review by appeal, and for such purpose only the decree shall be treated as a final order as soon as rendered; Provided, if appeal shall have been instituted within three months, such decree shall not become final until such proceedings are finally determined. If no such proceedings have been instituted, the district court may, at any time within said six months, vacate or modify its decree, but if such decree shall not have been vacated or modified, unless proceedings are then pending with that end in view, the original decree shall at the expiration of six months become final without any further action of the court."

In the case of Everson v. Everson, 101 Neb. 705, 164 N. W. 717, this court construed section 1606, Rev. St. 1913, which is analogous to section 42-340, R. S. 1943, "to mean that during the six months' period the action is still pending before the court; that the trial court has power over it similar to that which trial courts

have always exercised over their judgments during the term; that it is not a final order in any sense except for the purposes of appeal, but more in the nature of an interlocutory order which the court can, at any time, for good reason, vacate or modify." See Dudgeon v. Dudgeon, *supra;* Williams v. Williams, 146 Neb. 383, 19 N. W. 2d 630; Carpenter v. Carpenter, 146 Neb. 140, 18 N. W. 2d 737; 27 C. J. S., Divorce, § 168, p. 806; 17 Am. Jur., Divorce and Separation, § 450, p. 370; Blakely v. Blakely, *supra;* Faris v. Hope, *supra;* Colick v. Colick, *ante* p. 201, 26 N. W. 2d 820.

One of the purposes of the law in fixing a definite period between the entry of the decree of divorce, which has been held in this state to be in the nature of an interlocutory order, and the time that the divorce decree becomes absolute, is to give the spouses an opportunity to perfect a reconciliation which the law always favors. That being true, the marital relation as resumed by the parties after the entry of the decree of divorce, which is in the nature of an interlocutory order, should be protected by the court, and the beneficient purpose of the law furthered when possible. See Olson v. Superior Court, 175 Cal. 250, 165 P. 706, 1 A. L. R. 1589; Faris v. Hope, *supra.*

When a decree of divorce is rendered it does not become operative until six months thereafter. During the period of time from the rendition of the decree until it becomes final, as provided by law, the bonds of matrimony which previously existed between the parties are not dissolved. Before the decree of divorce became final in the instant case, the parties reconciled their differences and resumed the status of husband and wife.

"Reconciliation is a state of mind to be determined from all the evidence, including rational inferences, the real question before the court being whether the circumstances as a whole showed a mutual intention to effect a reconciliation and unite in mending the break

in the matrimonial yoke." Gump v. Gump, 42 Cal. App. 2d 64, 108 P. 2d 21.

This brings us to the question as to whether or not the trial court, or this court, is privileged to entertain the defendant's petition to vacate and set aside the decree of divorce entered April 14, 1941.

This court is cognizant of sections 25-2001 to and including 25-2008, R. S. 1943, and the parts thereof providing that the district court shall have the power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made, for fraud practiced by the successful party in obtaining the judgment or order. Further, that such action to do so must be commenced within two years, unless the party entitled thereto be an infant or person of unsound mind, and then within two years after the removal of such disability. We are likewise cognizant of the holding in Hoeppner v. Bruckman, 129 Neb. 390, 261 N. W. 572, and other cases holding the same, stating the exception to section 25-2008, R. S. 1943, as follows: "The only exception to the statutory limitation of two years is where the fraud was not discovered within that period." However, under the peculiar circumstances of the instant case, the following authorities are applicable and govern: The power to set aside judgments in original suits and proceedings is ordinarily exercised subject to restrictions imposed by general rules of law and equity, or statute, by courts of equity. In this state it has been declared a court of general jurisdiction, independently of an express statute, has power to set aside a decree of divorce fraudulently procured after the term at which it was granted. See Wisdom v. Wisdom, 24 Neb. 551, 39 N. W. 594, 8 Am. St. Rep. 215.

In Pavlik v. Burns, 134 Neb. 175, 278 N. W. 149, this court held: "Statute enumerating grounds under which a judgment may be vacated after expiration of term at which judgment was rendered does not provide

exclusive remedy, but such grounds are concurrent with independent equity jurisdiction."

The word "concurrent" means joint and equal in authority. See State v. Johnson, 170 N. C. 685, 86 S. E. 788; Rose v. Sprague, 248 Ky. 635, 59 S. W. 2d 554.

"Where the circumstances call for equitable relief, a decree may, upon petition in equity, be set aside by a court of equity having jurisdiction of the parties and of the subject-matter of the suit, after expiration of the term at which it was rendered." Pavlik v. Burns, *supra.*

The relationship of husband and wife is a very close, sacred, and confidential one, built and founded upon love, respect, and reliance. The plaintiff, to induce the defendant to return and live with him in the relationship of husband and wife, made promises that distinctively changed the conditions under which they formerly lived. He kept these promises, all but the most vital one. When they returned to live together in such relationship the defendant was privileged to transact business, sign checks using the plaintiff's name, and go on vacations with him. She made joint tax returns with him and entered into a conveyance of real estate, using his name. She relied upon him and should have under the circumstances. He held her out publicly and socially as his wife, by his conduct from September 12, 1941, until May 31, 1945, when they parted. The parties forgave each other all of their differences. The plaintiff condoned any misdeeds or wrongs he alleged the defendant committed against him. The grounds upon which he obtained his divorce then, in effect, became a nullity. Any contention that the plaintiff agreed to take the defendant back to his home and live with her as his mistress or demimonde is inconceivable.

The foregoing discloses that the plaintiff lulled the defendant into a sense of false security. The evidence is clear and convincing that he perpetrated a fraud upon the defendant and upon the court.

The precise question here presented has not hereto-

fore been before this court. In this connection, the defendant has cited cases from other jurisdictions where questions of a similar nature have been determined. Later in the opinion we will quote from such jurisdictions language we deem appropriate to the instant case. We have noted the distinction in the statutes of the several jurisdictions and the statutes in this state with reference to the finality of divorce decrees and what is required in some states before divorce decrees become final.

In Berger v. Berger, 44 R. I. 295, 117 A. 361, the court held: "The resumption of marital relations by the parties after a decision in a divorce petition and before entry of final decree, is a condonation of the offence of the husband and the court could not enter final decree thereafter * * *."

In Kronman v. Kronman, 129 Cal. App. 10, 18 P. 2d 712, the court held: "The obtaining of a final decree of divorce, after a reconciliation and resumption of marital relations subsequent to the entry of an interlocutory decree, without notice or knowledge of the other spouse, is extrinsic fraud, not only as to the other spouse, but also as to the court granting the same, since it is effected through concealment from the court, * * * of facts which the party requesting the final decree is bound to disclose, and which if disclosed would render improper the granting and impossible the procurement of the final decree."

In Cary v. Cary, 144 App. Div. 846, 129 N. Y. S. 444, the court said: "If the fact of the voluntary cohabitation had been known to the court at the time of the entry of the final judgment, the final judgment would undoubtedly have been denied. The fact that it was concealed from the court at that time gives full warrant to the court, upon the discovery of this fact after the entry of final judgment, to vacate and set aside the same."

In Kahn v. Kahn, 126 Misc. 44, 213 N. Y. S. 324, in

speaking of the same kind of concealment of facts as appears in the instant case, the court said: "The concealment was in effect a fraud upon the court, and the motion to vacate the judgment is granted."

In 3 Nelson, Divorce and Annulment (2d ed.), § 28.07, p. 134, it is stated: "Occasionally, of course, there is an actual reconciliation and forgiveness. In that event, if the court is advised of it, a final decree of divorce should not be entered. * * *

"The problem is one of whether the parties have become so reconciled as to have fully resumed relations as man and wife with the intention that they be permanent, obviating the necessity or desire for termination of the marriage and making its continuance a matter of social propriety and probable success. The factors involved are less legal than social, and such few decisions as there are only emphasize the incongruity of seeking to place divorce suits on the same plane as those to quiet title or replevin a chattel for unpaid instalments of the purchase price."

The record in the instant case shows a continuous living together in the relationship of husband and wife by the plaintiff and defendant from September 12, 1941, to May 31, 1945. We are convinced that under the circumstances and the evidence in this case it was the plaintiff's duty, when he condoned the misconduct of his wife upon which he obtained the decree of divorce and the parties reconciled their differences, to have informed the district court accordingly. The reconciliation having occurred prior to the decree of divorce becoming absolute, the plaintiff's failure to so notify the court constituted a fraud perpetrated by him on the court. We further believe that had the court known the full circumstances it would, in the exercise of its sound discretion, have set aside and vacated the decree of divorce obtained on April 14, 1941, by the plaintiff.

The cases of Carpenter v. Carpenter, *supra,* and Colick v. Colick, *supra,* are cited by the plaintiff on the theory

that since the decree of divorce becomes absolute at the expiration of six months without further action of the court, the resumption of marital relations within that period does not prevent the decree from becoming final or operative at the expiration thereof; that the proceedings to vacate the decree of divorce within six months period from the rendition thereof is not ex parte in nature, and notice must be given to the other party to enable such party to be heard if desired. In the instant case no such notice was given the defendant, and plaintiff contends she is bound to know the law on the subject.

We find nothing in the foregoing cases that, applied to the circumstances and the evidence in the case at bar, would upset the substantive law of this state and deny the right of a party to resort to a court of equity to vacate a decree of divorce obtained against such party by fraud, after the divorce becomes absolute. Nor do we find anything in the cited cases that would bar a court of equity from vacating a decree of divorce when the facts disclose a fraud was perpetrated on the court. Courts are protected by law when such instances occur. Reconciliation of the parties was not involved in the two cited cases.

Where parties, as here, continue their marriage and start to do so before the decree of divorce becomes absolute, or in other words notwithstanding the divorce, upon what rule or reasonable hypothesis should decrees erroneously determining otherwise remain of record? We think of none. In this connection, see Jordan v. Jordan, 105 Colo. 171, 96 P. 2d 13; Githens v. Githens, 78 Colo. 102, 239 P. 1023, 43 A. L. R. 547. To so hold would make a farce of judicial procedure and open the door to unlimited fraud and imposition on innocent and trusting persons. The result would be to make the law an instrument of oppression and a trap for the unwary, and oftentimes would develop intolerable situations involving innocent children and creditors in good faith,

to say nothing of the parties themselves, in inextricable confusion. Nothing but harm would result for all concerned.

We conclude, for the reasons given in this opinion, that the decree of the district court in finding generally in favor of the plaintiff and against the defendant should be, and is hereby, reversed; that the decree of divorce procured by the plaintiff, against the defendant on April 14, 1941, be, and is hereby, set aside and vacated, and the district court is directed to enter judgment accordingly.

In view of our holdings, other assignments of error need not be determined.

JUDGMENT ACCORDINGLY.