Gordon M. Eno and Zellma A. Eno v. Commissioner.
Eno v. Commissioner
Docket No. 293-64.
United States Tax Court
T.C. Memo 1965-219; 1965 Tax Ct. Memo LEXIS 111; 24 T.C.M. (CCH) 1122; T.C.M. (RIA) 65219; August 12, 1965
*111 Alimony: Periodic payments: Modification of decree. - Under a decree of divorce a husband was to pay his former wife a specified amount in monthly installments which would last for more than ten years. A higher court later accelerated the payments so that the principal amount would be paid within ten years. The Tax Court held that the period began at the time the final judgment of the higher court was entered rather than at the time the first decree was entered. Therefore the payments would be made within ten years qualifying as periodic payments which could not be deducted by the husband. The husband failed in his claim that the period began at the time of the original divorce decree and therefore lasted more than ten years. Joseph Ginsburg, for the petitioners. James T. Finlen, Jr., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in petitioners' income taxes: Taxable year
Deficiency
1957
$ 851.75
1958
601.79
1959
711.53
1960
1,119.34
Certain adjustments contained in respondent's notice of deficiency have been conceded by petitioners. The only issue for decision is whether installment payments made by petitioner *112 Gordon M. Eno qualify as periodic payments within the purview of section 71(c)(2), Internal Revenue Code of 1954, and are therefore includable in his former wife's gross income under section 71(a)(1) and deductible from petitioner's adjusted gross income under section 215. All facts have been stipulated by the parties. Such facts, together with the stipulated exhibits, are incorporated herein by this reference. Those facts necessary to an understanding of our inquiry are set forth in this opinion. Gordon M. and Zellma A. Eno are husband and wife residing at Lincoln, Nebraska. They filed joint Federal income tax returns for each of the calendar years 1957, 1958, 1959, and 1960 with the district director of internal revenue at Omaha, Nebraska. Since Zellma is a party in these proceedings only because she joined Gordon in joint income tax returns, Gordon alone will hereafter be referred to as petitioner. On September 20, 1952, Velda J. Eno (petitioner's former wife, hereafter called Velda) instituted a suit for divorce from petitioner in the District Court of Lancaster County, Nebraska. She sought, in addition to an absolute divorce, custody of the minor children, a division of the property *113 of the parties, temporary and permanent alimony, child support, attorney's fees and court costs. On June 15, 1953, the District Court entered a decree whereby Velda was granted an absolute divorce from petitioner. The decree provided as follows with respect to permanent alimony: 3. That the plaintiff [Velda] be and she is hereby awarded judgment against the defendant [Gordon], as and for permanent alimony, in the sum of $27,000.00, payable at the rate of $225,00 per month, beginning July 1, 1953, and to continue monthly until fully paid, said amount to be without interest on deferred installments, except those in default, which shall bear interest at the legal rate. The decree concluded with the following paragraph: PROVIDED, that this decree shall not become final, except for purposes of appeal and review, as provided by law, until six (6) months from this date. Dated at Lincoln, Lancaster County, Nebraska, this 15th day of June, 1953. On June 22, 1953, Velda filed a motion for a new trial with the District Court in which she moved to vacate the decision, decree, and judgment entered on June 15, 1953, and to grant her a new trial. She also filed a motion for temporary alimony, child *114 support, and allowances pending appeal, and an affidavit in support thereof. On July 22, 1953, the District Court overruled Velda's motion for a new trial and ordered petitioner to pay her the sum of $225 on the 15th day of each month, beginning on July 15, 1953, pending appeal. On July 24, 1953, Velda filed a notice of appeal from the decree entered on June 15, 1953, and from the order overruling her motion for a new trial. The petitioner cross-appealed. On June 25, 1954, the Supreme Court of Nebraska filed its opinion affirming in part and modifying in part the decree of the District Court. The District Court decree was modified to provide: "The alimony allowed the plaintiff [Velda] is increased to $32,000, payable $250 per month beginning July 1, 1954, and to continue monthly until fully paid." In all other respects the decree of the District Court was affirmed. Velda then filed a motion for rehearing and brief in support thereof with the Supreme Court of Nebraska wherein she alleged that the Supreme Court's award of permanent alimony was inadequate and insufficient. The motion was based upon a showing that under section 22(k) of the 1939 Code Velda would be forced by the court's *115 decree to include the alimony in her income because the time over which payment was to be made was extended to a period longer than 10 years. This resulted in her receiving less under the Supreme Court's decision than she had been awarded by the District Court. The motion concluded by asking the Supreme Court to either increase the total alimony payable, or decrease the period over which it was to be paid to less than 10 years. On October 22, 1954, the Supreme Court of Nebraska modified its opinion filed the previous June 25 by maintaining the alimony allowed Velda at $32,000 but altering the rate of payment from $250 per month to $270 per month beginning July 1, 1954, and continuing monthly until fully paid. The initial opinion of the Supreme Court filed June 25, 1954, was in all other respects adhered to and Velda's motion for a rehearing was overruled. By mandate dated November 12, 1954, filed with the District Court on November 13, 1954, the Supreme Court of Nebraska directed the District Court of Lancaster County to proceed in conformity with its judgments. During each of the calendar years 1957 through 1960 petitioner paid $3240 (12 monthly payments of $270 each) to the clerk *116 of the District Court, Lancaster County, Nebraska, to distribute to Velda. In each of their Federal income tax returns for the taxable years 1957 through 1960 petitioner and his present wife, Zellma, deducted from their adjusted gross income $3240 as alimony payments. Opinion Section 215 of the Internal Revenue Code of 1954[1] allows a husband to deduct from his adjusted gross income any alimony or support payments includable in his wife's income under section 71, Internal Revenue Code of 1954. [2] *118 Section 71(c)(1) specifically excludes from a wife's income any "installment" payments she receives which discharge "a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree." However, an exception to this rule is provided in section 71(c)(2). [3] The petitioner concedes that the disputed amounts are "installment payments" within the meaning of section 71(c)(1). But he argues that they come within the exception set out in section 71(c)(2) because the 10-year period begins to run from the first moment a legal obligation to pay support arises. In other words, he contends that the 10-year period began on June 15, 1953, the day the District *117 Court of Lancaster County entered its interlocutory decree. Respondent, on the other hand, maintains that the 10-year period started on the date the Supreme Court of Nebraska entered the final decree of divorce. We agree with the respondent. As we view it, the important and crucial consideration here is under what decree the legal obligation to pay permanent alimony arose. Obviously the petitioner was *119 under a legal obligation to pay temporary alimony no later than July 22, 1953. But that obligation arose from the fournal entry made by the District Court of Lancaster County awarding Velda temporary alimony of $225 a month, pending appeal. Such order was a judicial decree, Florence Korman, 36 T.C. 654 (1961), affirmed per curiam 298 F. 2d 444 (C.A. 2, 1962), having its own tax consequences apart from those flowing from the divorce decree itself.[4] *120 The petitioner's argument fails because he was under no legal obligation to pay the permanent alimony set out in the divorce decree until Velda's appeal was completed and a final decree was entered by the Supreme Court of Nebraska. Petitioner has attempted to "tack" the period during which he was obligated to pay temporary alimony under a separate judicial decree to the period established for the payment of permanent alimony under the terms of the divorce decree itself, and this, of course, he cannot do. In Alice Humphreys Evans, 19 T.C. 1102 (1953), affirmed 211 F. 2d 378 (C.A. 10, 1954), we held that a wife did not have to include in income under section 22(k), Internal Revenue Code of 1939, amounts she received pursuant to an interlocutory decree of divorce because it was not a final decree. This decision was based on our earlier holding in Marriner S. Eccles, 19 T.C. 1049 (1953), affirmed per curiam 208 F. 2d 796 (C.A. 4, 1953). A reading of these decisions indicates that for purposes of inclusion in a wife's income under section 71(a)(1), the successor to section 22(k), payments must be made under a decree of divorce or separate maintenance that affects the permanent status of the marriage, viz., a final decree. The question of when a divorce decree becomes final is a matter of State law. Marriner S. Eccles, supra; cf. Kenneth T. Sullivan, 29 T.C. 71 (1957), affirmed 256 F. 2d 664 (C.A. 4, 1958). The law of Nebraska is clear. Section 42-340, Revised Statutes of Nebraska, provides: Decree of divorce; becomes final, when; appeal; modification; vacation. *121 A decree of divorce shall not become final or operative until six months after trial and decision, except for the purpose of review by appeal, and for such purpose only the decree shall be treated as a final order as soon as rendered; Provided, if appeal shall have been instituted within one month, such decree shall not become final until such proceedings are finally determined. If no such proceedings have been instituted, the district court may, at any time within said six months, vacate or modify its decree, but if such decree shall not have been vacated or modified, unless proceedings are then pending with that end in view, the original decree shall at the expiration of six months become final without any further action of the court. In support of the statutory language, see Dudgeon v. Dudgeon, 142 Neb. 82, 5 N.W. 2d 133 (1942); Faris v. Hope, 298 Fed. 727 (C.A. 8, 1924); Sovereign Camp W.O.W. v. Billings, 107 Neb. 218, 185 N.W. 426 (1921); and Shinn v. Shinn, 148 Neb. 832, 29 N.W. 2d 629 (1947). The petitioner contends that the validity of the District Court's decree was not an issue before the Supreme Court and, therefore, was effective and operative from the date of its *122 entry on June 15, 1953. We think this contention is without merit. In Nebraska an appeal from a divorce decree suspends the decree and brings the case to the Supreme Court for trial de novo, and the marital relations continue unchanged until the appeal is finally determined. Lippincott v. Lippincott, 3 N.W. 2d 207 (Neb. 1942); Workman v. Workman, 83 N.W. 2d 368 (Neb. 1957). The petitioner appears to recognize this rule in his brief since he acknowledges that "pending the determination of appeal, a complete severance of the marital status did not take place." Although the Nebraska Supreme Court stated in its opinion of June 25, 1954, that it would serve no useful purpose to recite the marital difficulties of the parties, it nevertheless made various findings with respect thereto and concluded that the "evidence is ample to sustain the granting of a divorce to the plaintiff [Velda]." Thus it can hardly be said that the Supreme Court of Nebraska did not consider whether the divorce decree was supported by sufficient and competent evidence. In any event, Nebraska law provides that, when an appeal is taken in a divorce suit, the decree does not become final or operative until the proceedings *123 have been finally determined. Williams v. Williams, 19 N.W. 2d 630, 633 (Neb. 1945). The petitioner further contends that the District Court's decree of divorce was effective and operative from the date of its entry since it was later affirmed by the Supreme Court. This point is answered by the Supreme Court of Nebraska in Westphalen v. Westphalen, 212 N.W. 429 (Neb. 1927), where it said (p. 430): In such a case, it is not the interlocutory decree entered by the trial court that is controlling, but the final consideration thereof and decree entered by this court or directed by this court to be entered in the trial court, which annuls or continues the marital relations of the parties; and until such final consideration or decree, such original marriage relation continues. As such appeal when perfected vests this court with jurisdiction to try the case de novo, such jurisdiction must and does continue until a final disposition thereof is made by us. See also Shinn v. Shinn, supra, Scott v. Scott, 46 N.W. 2d 627 (Neb. 1951); and In re Parker's Estate, 128 N.W. 2d 696 (Neb. 1964). Finally, the petitioner argues that the Supreme Court's modification of the amount of alimony to be *124 received by Velda "relates back" to the date of the original decree of divorce, i.e., June 15, 1953. What we have previously said with respect to the effective and operative date of a Nebraska divorce decree, in cases where an appeal from the decree is taken, is believed to be equally applicable to the Supreme Court's modification of the decree. In short, we reject the argument that there is any relation back. None of the cases cited by the petitioner support this argument, including Gale v. Commissioner, 191 F. 2d 79 (C.A. 2, 1951), affirming 13 T.C. 661 (1949), upon which the petitioner primarily relies. The Gale case is distinguishable for the following reasons: (1) neither the separation agreement nor the original decree of divorce in Gale provided for the payment of a "principal sum"; (2) the separation agreement specified that it should survive a decree of divorce, it provided for the continuance of monthly payments of alimony until the wife died or remarried, and it made provision for adjustment in the amount of alimony under specified circumstances and upon application to the Supreme Court of the State of New York; (3) the amount of alimony being subject to adjustment, the *125 modification merely made certain in amount, for the time being, the monetary obligation originally imposed by the divorce decree; and (4) the payments there involved were held by the Court to constitute "periodic" payments, as compared to the installment payments discharging in part a "principal sum" with which we are here concerned. It makes no difference whether the decree of the Supreme Court of Nebraska, entered on June 25, 1954, or the modification thereof, entered on October 22, 1954, operates as the final decree of divorce. In either event the amounts which the petitioner seeks to deduct were paid in satisfaction of a sum, certain in the decree, payable over a period of less than 10 years. The Supreme Court's judgment and opinion of June 25, 1954, as modified by its judgment and opinion of October 22, 1954, required the petitioner to pay the principal sum of $32,000, payable $270 per month beginning July 1, 1954, and continuing monthly until paid. To discharge this obligation required 118 monthly installments of $270 and a final installment of $140; or a total of 119 monthly installments. Applying the rule of United States v. Reis, 214 F. 2d 327 (C.A. 10, 1954), that each *126 monthly installment could be paid without default at any time until the last day of the month, the last day on which the final installment of $140 was to be paid by the petitioner was May 31, 1964. Since that date is less than 10 years from June 25, 1954, the monthly payments for the years in issue were not includable in Velda's gross income under section 71(c)(2) and, consequently, are not deductible by petitioner under section 215. It also does not matter whether the Supreme Court of Nebraska intended to adjust the amount of the monthly installment payments in such a manner that the application of the Federal tax statute would result in their exclusion from Velda's gross income. Since we are bound by the Nebraska Supreme Court's decision as to the amount of alimony awarded and the length of time fixed for paying it, we need not examine its motives for reaching such a decision. That is beyond the scope of our present inquiry. Suffice it to say that the Supreme Court of Nebraska did shorten the period for payment under the final decree to less than 10 years, and we are bound by its action. Decision will be entered for the respondent. Footnotes
1. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income. 2. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. 3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. * * *
(c) Principal Sum Paid in Installments. - * * $ (2) Where Period for Payment is More Than 10 Years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.↩
4. The temporary alimony payments made by petitioner are not before us in this case because they were paid prior to the years in issue. Their taxation is not an essential element in this case because, even if they were includable in Velda's income, they cannot affect the treatment of payments received by her as permanent alimony under the terms of the divorce decree.