STATE, EX REL. RICHARD C. HUNTER, ATTORNEY GENERAL, PLAINTIFF, v. LLOYD CROCKER, DEFENDANT.

271 N. W. 444

FILED FEBRUARY 19, 1937.   No. 30079.

*Richard C. Hunter, Attorney General,* and *Paul P. Chaney,* for plaintiff.

*H. N. Mattley* and *Lloyd Crocker,* for defendant.

Heard before DAY. and PAINE, JJ., and TEWELL, CHAPPELL and YEAGER, District Judges.

DAY, J.

The attorney general filed a complaint for disbarment against Lloyd Crocker, an attorney at law, the basis of which is that the defendant caused to be published in a daily newspaper an advertisement as follows: "DIVORCES $15 and costs. Default cases. Lloyd Crocker, lawyer, 230 Brandeis Theatre Bldg., At. 7732." The defendant filed a written answer in which he admitted the publication as alleged. In his answer, he also asked leave to appear personally before the court, which he was permitted to do January 21, 1937. At that time, he made no attempt to justify his conduct in any manner but expressed great regret about the matter and gave assurances that there would be no repetition of such conduct on his part. The matter is now before the court for a judgment on the pleadings. It has long been recognized by the profession as improper for a lawyer to advertise for business. The very nature of the professional employment is such that for one to do so violates the public policy of the state to the detriment of the public.

Canon 27 of Professional Ethics as published by the American Bar Association is pertinent here: "The most worthy and effective advertisement possible, even for a young lawyer, and especially with his brother lawyers, is the establishment of a well-merited reputation for professional capacity and fidelity to trust. This cannot be forced, but must be the outcome of character and conduct. The publication or circulation of ordinary simple business cards, being a matter of personal taste or local custom, and sometimes of convenience, is not *per se* improper. But solicitation of business by circulars or advertisements, or by personal communications or interviews, not warranted by personal relations, is unprofessional. It is equally unprofessional to procure business by indirection through touters

of any kind, whether allied real estate firms or trust companies advertising to secure the drawing of deeds or wills or offering retainers in exchange for executorships or trusteeships to be influenced by the lawyer. Indirect advertisement for business by furnishing or inspiring newspaper comments concerning causes in which the lawyer has been or is engaged, or concerning the manner of their conduct, the magnitude of the interests involved, the importance of the lawyer's positions, and all other like self-laudation, defy the traditions and lower the tone of our high calling, and are intolerable."

This canon is declarative of the rules recognized generally by the profession. Canons of ethics and rules governing professional conduct among attorneys are recognized and applied by courts in proper cases. *Hepp v. Petrie,* 185 Wis. 350, 200 N. W. 857. Indeed, this court has very recently applied this rule in two unreported cases. But even before that, this court in the case of *State v. Goldman* (1934) 127 Neb. 340, 255 N. W. 32, applied this rule, when it held that the action of an attorney in carrying on directly or through others employed by him systematic solicitation of damage suits, a business commonly known as "ambulance chasing," warranted disbarment. However, before, in *State v. Priest* (1932) 123 Neb. 241, 242 N. W. 433, it was held that attorneys assume certain obligations and duties as officers of the courts, and in the performance thereof they must conform to certain standards in relation to clients, to the courts, to the profession, and to the public. See, also, *State v. Ireland,* 125 Neb. 570, 251 N. W. 119.

When one seeks and attains admission to the bar of the courts of this state, he voluntarily assumes the obligations imposed by the ethical regulations generally recognized by the profession, and the violation of such rules renders an attorney subject to disbarment or suspension.

In *In re Winthrop* (1925) 135 Wash. 135, 237 Pac. 3, although the legislature had adopted the Canons of Professional Ethics of the American Bar Association as the standard, the court stated that they have quite generally

been approved as a correct statement of the rules which should govern the conduct of an attorney. Legislative recognition of the high standards of professional conduct is gratifying, but not essential for the court to discipline its own officers. Regardless of the Canons of Professional Ethics of the American Bar Association, it has long been recognized by the profession as grossly undignified and improper for a lawyer to advertise for professional employment. *Matter of Neuman,* 169 App. Div. 638, 155 N. Y. Supp. 428. It has also been stated as long ago as 1893 that the "ethics of the legal profession forbid that an attorney should advertise his talents or his skill as a shopkeeper advertises his wares." *People v. MacCabe,* 18 Colo. 186, 32 Pac. 280. A well-known annotator has collected a number of cases supporting this view. See annotation, 55 A. L. R. 1313, to the case of *Matter of Cohen,* 261 Mass. 484, 159 N. E. 495, in which it was held: "The supreme judicial court may, as part of its inherent jurisdiction, investigate the conduct of attorneys at law and remove them from office absolutely, or suspend them for a stated period, if found guilty of conduct in any respect unbecoming the high standard of propriety which should be maintained by all members of the legal profession." See, also, *People v. Berezniak* (1920) 292 Ill. 305, 127 N. E. 36, and *In re Morrison* (1920) 43 S. Dak. 185, 178 N. W. 732. It will be noted from the dates of the various opinions that there is a marked trend of judicial opinion toward a maintenance of the high ethical standards of the profession.

But the basis of these decisions is the public policy of the state and the public interest. "Ambulance chasing" and advertising for professional employment by lawyers have long been recognized by the profession as inimical to the public welfare, and this is especially true when a lawyer advertises for employment in divorce cases. It is not in the public interest that a lawyer stir up litigation and strife among people in order to secure professional employment. Experience has demonstrated that there is a temptation, under such circumstances, to instigate litigation

where no sufficient cause exists. This is particularly repre-hensible where the litigation involved is divorce. It cannot be condemned in too severe terms. The public policy of this state, as declared by legislative enactment, is to discourage divorce cases. The state is an interested party. The dissolution of the marriage relation involves a matter of public interest. A divorce cannot be granted upon the agreement of the parties, nor upon their uncorroborated testimony. Even the jurisdiction relative to divorces exercised by the courts is given by statute, and there is no power relative thereto outside of the statute. In view of the many legislative declarations of public policy, it may be said that it contravenes the public interest to encourage divorce litigation. This is particularly true of a lawyer whose sole interest is his professional employment in a divorce case. The advertisement involved in this case was a solicitation for professional employment in divorce cases.

While this is the first case which has been brought to the attention of this court, numerous other courts have considered the proposition. The Minnesota court in *State v. Giantvalley*, 123 Minn. 227, 143 N. W. 780, held that an advertisement stating that accused attorney specialized in divorce matters violated a statute, though defendant did not expressly offer to procure divorces or to accept professional employment in divorce suits. The attorney in that case was convicted of a violation of a criminal statute prohibiting advertising for divorce cases. However, the opinion discusses the regulation of the bar and the public policy of the state.

The South Dakota court held in *In re Donovan*, 43 S. Dak. 98, 178 N. W. 143, that an attorney who published a booklet containing clippings purporting to have been taken from many newspapers referring to him as an international expert on marriage and divorce was "guilty of advertising as a divorce lawyer through the public press." In that case, the attorney advertised himself as particularly qualified to secure divorce decrees and the state as a place to secure an easy divorce. That attorney was suspended

from practice for a period of six months, without reference to any statute directly condemning the practice.

The Colorado court in *People v. MacCabe, supra,* decided: "The ethics of the legal profession forbid that an attorney should advertise his talents or his skill as a shopkeeper advertises his wares. An attorney may properly accept a retainer for the prosecution or defense of an action for divorce when convinced that his client has a good cause. But for any one to invite or encourage such litigation is most reprehensible." In that case the attorney was suspended from practice for a period of six months. In the annotation in which this case is cited in 9 A. L. R. 1500, it is stated: "It is generally held that the encouragement by attorneys of divorce litigation, by means of advertisements or circulars so worded as to induce divorce proceedings, and the employment of themselves therein, constitutes ground for disbarment or suspension."

The Nevada court condemned such practice in *In re Schnitzer,* 33 Nev. 581, 112 Pac. 848. See, also, *Reno Bar Ass'n v. Scoular,* 34 Nev. 313, 123 Pac. 13.

The California court suspended an attorney from practice for a period of five years for advertising in violation of a statute prohibiting an attorney from advertising for employment in divorce cases. *In re Biaggi,* 36 Cal. App. 650, 172 Pac. 1130. See, also, *Mayer v. State Bar of California,* 26 Pac. (2d) 9, where the offense was the attorney's advertising Mexican and Nevada divorces. The attorney was suspended for one year. In Massachusetts, an attorney has been suspended from practice for a period of two months for soliciting divorce litigation by advertisements. *Matter of Cohen, supra.*

This casual review of the authorities reveals that the courts generally have condemned the practice of a lawyer advertising for professional employment and particularly for divorce cases. We have found no authority approving the practice. It does not seem that the practice of lawyers hawking their brains as wares upon the street corner could be approved. An advertisement in a newspaper by an at-

torney at law soliciting divorce cases is conduct requiring discipline.

It is now necessary to determine the discipline required by the circumstances of this particular case. It appears that the advertisement appeared in the classified columns of the Omaha Bee-News for four consecutive days, and that the attorney then discontinued it. In his appearance before this court, the attorney expressed regret and gave assurances that it would not be repeated. We regret that it is not possible for us to end the matter with a reprimand, but duty seems to demand more than that. Considering the attorney's departure from the standards of conduct generally recognized by the profession and required by the public policy and the public interest of the state, it is necessary to give our action a punitive quality to mark the high obligation of the members of the bar. The order will be that the attorney be suspended from his rights and privileges as a member of the bar of the courts of this state for 30 days from this day, and pay the costs of the proceeding.

JUDGMENT OF SUSPENSION.