STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. LESTER C. HUNGERFORD, RESPONDENT.
67 N. W. 2d 468

Filed December 28, 1954. No. 33435.

Clarence S. Beck, Attorney General, and Robert A. Nelson, for relator.

. *Lester C. Hungerford,* pro se.

. Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an original disciplinary proceeding initiated by the relator, Nebraska State Bar Association, against the respondent, Lester C. Hungerford, a lawyer, who is duly licensed and admitted to the practice of law in this state.

The formal complaint is in two counts, each asserting conduct on the part of the respondent alleged to be in violation of his duties and obligations as a practicing lawyer. After the filing of the complaint the matter was referred to Lester A. Danielson, referee, for hearing, report, and recommendation. A hearing was had and the report of the referee filed with this court in which it was determined that the charge contained in. Count 1 was not sustained by sufficient evidence. As to Count 2, the referee found that the charge was established and recommended that disciplinary action be taken against the respondent. The respondent filed no exceptions to the report of the referee. The matter is before this court on the motion of the Attorney General for a final judgment pursuant to Rule 8, Rules of the Supreme Court, governing disciplinary proceedings, and for an order disbarring the respondent, Lester C. Hungerford.

We shall not undertake to review the record relating to Count 1, on which the referee found the evidence to be insufficient to sustain the charge, in view of the conclusion we have reached as to Count 2.

It is alleged in Count 2 of the complaint that respondent was appointed referee in a partition proceeding in the district court for Hooker County, Nebraska, entitled Hayward v. Coombes. He furnished bond, qualified as referee, and sold the real estate involved to

Coombes for $5,320. The sale was confirmed on August 5, 1947. Coombes was the owner of a two-thirds interest in the land, Hayward being the owner of the other one-third. The total expense connected with the partition amounted to $426.70. Hayward was therefore entitled to $1,631.10 for his one-third interest in the real estate.

The record discloses that Coombes paid respondent $466.67 on July 7, 1947; $131.25 on July 10, 1947; and $1,175.41 on July 24, 1947; a total sum of $1,773.33. This money was deposited in a joint account in the Bank of Mullen with respondent and the clerk of the district court as joint depositors. On July 26, 1947, respondent transferred the joint account to the Hungerford Trust Account in the Bank of Mullen. From July 28, 1947, to November 13, 1947, respondent drew 43 checks on this trust account, reducing it from $1,773.33 to $1.24.

The record shows further that respondent excused his refusal to distribute the money realized from the sale of the real estate on the ground that Coombes had not paid in sufficient funds to pay up the costs. It is true that after the payments by Coombes in the total amount of $1,773.33 had been made, $284.46 remained to be paid by him. This amount was paid by Coombes on May 20, 1948. Respondent cashed this check and converted it to his own use. It is clear therefore that Coombes had paid in the full amount owing on the land involved in the partition suit on May 20, 1948. The respondent paid $366.05 on the expenses of the partition suit and converted the remaining $1,690.50 to his personal use.

The attorney for plaintiff in the partition suit was Carl G. Humphrey of Mullen, Nebraska. Humphrey demanded an accounting of the funds on the following dates: June 28, 1948; July 9, 1948; November 4, 1948; March 2, 1949; April 15, 1949; January 23, 1951; February 27, 1951; and July 2, 1951.

On September 14, 1951, respondent deposited $1,750 in his trust account and paid up the amounts owing. Respondent states that he had this money in a bank at Holdrege, Nebraska, in his mother's name for reasons which are immaterial to this proceeding. It is quite evident that he obtained the money from his mother to pay up the shortage in his account which had existed for more than 3 years.

The respondent is engaged in the practice of law at Hyannis, Nebraska. He was graduated from law school in 1932 and was admitted to the bar immediately thereafter. He commenced the practice of law at Friend, Nebraska, where he remained for about 4 years. He thereafter practiced at Holdrege for a time and then took a position as a cost accountant for a construction company in Alaska. In 1945 he commenced the practice of law in Bozeman, Montana, where he remained for something over a year. In 1946 he came to Hyannis where he has since practiced.

" 'In granting a license to practice law it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts.' " State ex rel. Sorensen v. Scoville, 123 Neb. 457, 243 N. W. 269.

"The purpose of a disbarment proceeding is not so much to punish the attorney as it is to determine in the public interest whether he should be permitted to practice." State ex rel. Spillman v. Priest, 123 Neb. 241, 242 N. W. 433.

"An attorney, as an officer of this court, must so conduct himself as to assist in maintaining confidence in the integrity and impartiality of the courts." State ex rel. Sorensen v. Goldman, 127 Neb. 340, 255 N. W. 32.

"An attorney owes his first duty to the court. He assumed his obligations toward it before he ever had a client. His oath requires him to be absolutely honest

even though his client's interests may seem to require a. contrary course. A lawyer cannot serve two masters; and the one he has undertaken to serve primarily is the court.

"A duty rests on the courts to maintain the integrity of the legal profession by disbarring attorneys who indulge in practices designed to bring the courts or the profession into disrepute, or to perpetrate a fraud on the courts, or to corrupt and defeat the administration of justice." State ex rel. Nebraska State Bar Assn. v. Niklaus, 149 Neb. 859, 33 N. W. 2d 145.

"Canons of ethics and rules governing professional conduct among attorneys are recognized and applied by courts in proper cases." State ex rel. Hunter v. Crocker, 132 Neb. 214, 271 N. W. 444.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." Canon 11, Canons of Professional Ethics of American Bar Association. See, also, Part IV, Article X, Rules of the Supreme Court.

In this case the respondent not only violated his obligation as an attorney at law. by misappropriating and converting $1,690.50 to his own use, but he violated his oath and obligation as a referee in so doing. He not only brought discredit upon the profession of the law but he brought discredit upon the courts and failed in a position of trust while acting as an arm of the court that appointed him. He has been found wanting in integrity, honesty, and good moral character. He thereby forfeits his license to practice the profession of law, the attributes of which require fidelity, trustworthiness, and good moral character in order for one to be admitted to practice, and the profession requires the continuance of those attributes during the time he is so engaged.

Relator attempts to excuse his conduct on the ground

that, although he was lax in his methods, it was nothing more than mere carelessness, since he had adequate funds at all times with which to pay the obligation. This assertion is based on the unsupported statement of the relator that he had adequate funds in a Holdrege bank in the name of his mother upon which he was authorized to draw. While it would appear under the circumstances of this case that the mother of relator came to his aid when the time drew near for a legal accounting, he could not be absolved of guilt even if his statement was literally true. We know of no rule that one possessed of funds or property may not be guilty of appropriating and converting the funds or property of others to his own use. The respondent did pay off the financial obligations which devolved upon him in his capacity as referee on September 14, 1951, more than 3 years after he should have done so. He placed the money derived from the sale, except the item of $284.46, in a trust account. He used this earmarked money for his personal use. The check for $284.46 was cashed and used by respondent without it being deposited in a bank. Restitution of funds willfully converted by an attorney is not an exoneration of his professional misconduct. On this question we have said: "We cannot condone respondent's conduct simply because he attempted to make restitution after he was faced with the issue of legal accountability. * * * Mere restitution of funds wilfully converted by an attorney is not a professional exoneration." State ex rel. Nebraska State Bar Assn. v. Hyde, 138 Neb. 541, 293 N. W. 408.

An order of disbarment is required. Respondent will accordingly be disbarred from the practice of law in this state, his license to practice is cancelled, and his name is ordered stricken from the roll of lawyers.

JUDGMENT OF DISBARMENT.