STATE EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. CLAY B. STATMORE, RESPONDENT.

352 N.W.2d 875

Filed July 27, 1984.   No. 83-844.

Dennis G. Carlson, Counsel for Discipline, and Alison L. Larson, for relator.

Paul E. Galter of Bauer, Galter, Geier & Flowers, for respondent, and, on brief, Dana M. London.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

This is an original disciplinary proceeding by the State of Nebraska ex rel. Nebraska State Bar Association against Clay B. Statmore, an attorney admitted to practice in Nebraska. After a hearing before the Committee on Inquiry of the First Disciplinary District and a review by the Disciplinary Review Board, formal charges against Statmore have been filed in this court.

Statmore does not deny the charges. The charges allege violations of the following:

CANON 1. A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession.

. . . .

DR 1-102. Misconduct.

A. A lawyer shall not:
1. Violate a Disciplinary Rule.

. . . .

6. Engage in any other conduct that adversely reflects on his fitness to practice law.

. . . .

CANON 9. A Lawyer Should Avoid Even the Appearance of Professional Impropriety.

. . . .

DR 9-102. Preserving Identity of Funds and Property of a Client.

. . . .

B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities, or other properties.

. . . .

4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

We review the evidence de novo to determine if discipline should be be imposed and, if discipline is warranted, the nature of the discipline which is appropriate under the circumstances. See *State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 326 N.W.2d 173 (1982).

On April 15, 1982, Statmore undertook representation of Deborah A. Kuzara regarding a charge of driving while intoxicated, second offense. Kuzara, on June 2, gave Statmore her check for $500—the agreed fee for the representation. Statmore deposited Kuzara's June 2 check, which was returned twice by the bank due to insufficiency of Kuzara's account. Statmore contacted Kuzara and her father in New Jersey about the insufficient fund check.

On June 22 Kuzara issued another check (check A) for $500, which Statmore deposited but which was returned to Statmore's Lincoln bank on account of Kuzara's insufficient funds. On June 30 Kuzara sent Statmore still another check (check B) in the amount of $540—$500 for Statmore's fee, plus $40 for the check service charges regarding the other Kuzara checks. Check B was returned on account of insufficient funds. Unbeknown to Statmore, his bank had held check A and collected that check on July 9, 1982, with credit to Statmore's business account in the sum of $495 ($500 less a $5 service charge). Statmore again contacted Kuzara about the insufficient fund checks. At this time Statmore was still unaware that the bank had credited his account $495 for check A on July 9.

Statmore took check B to the Lancaster County attorney and requested criminal prosecution. Notified by the county attorney regarding prosecution on check B, Kuzara hired attorney George Thompson of Bellevue, Nebraska. Kuzara later delivered $540 to the county attorney for check B. On November 12 the county attorney sent $540 to Statmore regarding check B.

Kuzara contacted Statmore about the possibility of a double payment, that is, check A credited to Statmore on July 9 and the funds from the county attorney on November 12 regarding check B. Statmore asked for verification from Kuzara that there was in fact a double payment, and felt he was getting a "runaround" about the checks.

Attorney Thompson wrote Statmore on January 5, 1983, pointed out the double payment, and requested a reply. Statmore did not respond to Thompson's letter. Early in February, Statmore checked his deposit slips and saw that there indeed had been the "$495 deposit" (check A) to his account on July 9. This was apparently Statmore's first verification of payment on

check A. Thompson again wrote to Statmore on March 2 and demanded Kuzara's $495 by return mail. Statmore never responded to that letter. By March 14 Statmore conclusively realized that he had received double payment from Kuzara. On March 16 Thompson telephoned Statmore, who then acknowledged the double payment and told Thompson he did not have the funds to reimburse Kuzara.

On May 23 Kuzara filed a complaint with the Counsel for Discipline of the Nebraska State Bar Association. Counsel for Discipline wrote Statmore as soon as Kuzara filed her complaint. Statmore paid Kuzara $250 on June 28 and the same day wrote the Counsel for Discipline that he had "recently" paid Kuzara $250. In his June 28 letter to the Counsel for Discipline, Statmore also mentioned that the "remaining $245 should be repaid within the next fourteen days." Statmore paid nothing further until the day of the hearing before the Committee on Inquiry.

On the day of the hearing before the Committee on Inquiry, September 20, Statmore brought the Counsel for Discipline a check for $245 to pay Kuzara, and stated he "didn't know who to send it to."

Statmore says he never reconciles his monthly bank statement and, therefore, had no knowledge that check A had cleared and been credited to his account on July 9. Such ignorance regarding check A existed at the time Statmore received the money from the Lancaster County attorney regarding check B.

Throughout all the time in question, Statmore was having financial problems: failed to pay utilities (some of which were disconnected) and did not pay office rent (moved his office after delinquency in rent). Statmore implies that the somewhat chaotic office situation explains, if not excuses, the sorry state of affairs during his representation of Kuzara.

Implicit in the license to practice law is the requirement that the recipient of the license shall demean himself in a proper manner and shall refrain from practices which bring discredit upon the lawyer, the profession, and the courts. See, *State ex rel. Nebraska State Bar Assn. v. Hungerford*, 159 Neb. 468, 67 N.W.2d 759 (1954); *State ex rel. Nebraska State Bar Assn. v.*

*Conover*, 166 Neb. 132, 88 N.W.2d 135 (1958).

Any violation of the ethical standards relating to the practice of law, or any conduct of an attorney which tends to bring reproach upon the courts or the legal profession, constitutes grounds for suspension or disbarment. See, *State ex rel. Nebraska State Bar Assn. v. Bremers*, 200 Neb. 481, 264 N.W.2d 194 (1978); *State ex rel. Nebraska State Bar Assn. v. Strom*, 189 Neb. 146, 201 N.W.2d 391 (1972).

When the double payment occurred, Statmore held Kuzara's money, which he was not authorized to retain. Kuzara's conduct or mistake concerning payment of her checks did not relieve Statmore of his professional duty regarding his client's funds. Accurate accountability of a client's funds is the responsibility of the lawyer, not the client. Statmore's slipshod office management and careless bookkeeping prevented any semblance of the accurate accounting lawyers must maintain with respect to a client's funds. As a result of Statmore's poor management and failure to keep track of payment from Kuzara, there was a commingling of a client's money—an area of gravest concern of this court in reviewing claimed lawyer misconduct. The prohibition against commingling of funds is a salutary rule adopted

> "to provide against the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in the loss of clients' money. Moral turpitude is not necessarily involved in the commingling of a client's money with an attorney's own money if the client's money is not endangered by such procedure and is always available to him. However, inherently there is danger in such practice for frequently unforeseen circumstances arise jeopardizing the safety of the client's funds, and as far as the client is concerned the result is the same whether his money is deliberately misappropriated by an attorney or is unintentionally lost by circumstances beyond the control of the attorney."

*In re Moore*, 110 Ariz. 312, 314-15, 518 P.2d 562, 564-65 (1974), citing and quoting from *Peck v. The State Bar*, 217 Cal. 47, 17 P.2d 112 (1932).

A lawyer's poor accounting procedures and sloppy office management are not excuses or mitigating circumstances in ref-

erence to commingled funds. See, *Attorney Griev. Comm'n v. Boehm*, 293 Md. 476, 446 A.2d 52 (1982); *Inniss v. State Bar*, 20 Cal. 3d 552, 573 P.2d 852, 143 Cal. Rptr. 408 (1978).

We realize that Statmore has repaid Kuzara the overpayment. However, a lawyer's restitution of a client's funds after being faced with legal accountability does not exonerate professional misconduct. See, *State ex rel. Nebraska State Bar Assn. v. Bremers, supra; State, ex rel., Okl. Bar Ass'n v. Raskin*, 642 P.2d 262 (Okla. 1982).

Among the major considerations in determining whether a lawyer should be disciplined is maintenance of the highest trust and confidence essential to the attorney-client relationship. As a profession, the bar continuously strives to build and safeguard such trust and confidence, but conduct such as before us in the present case weakens the efforts of the overwhelming majority of lawyers in Nebraska whose conduct meets, if not exceeds, the Code of Professional Responsibility.

> To determine whether and to what extent discipline should be imposed, it is necessary that we consider the nature of the offense, the need for deterring others, the maintenance of the reputation of the bar as a whole, the protection of the public, the attitude of the offender generally, and his present or future fitness to continue in the practice of law.

*State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 819, 326 N.W.2d 173, 175-76 (1982).

Therefore, under the circumstances we find that a suspension is appropriate discipline for Statmore and that Statmore should be suspended from the practice of law for a period of 6 months. During such suspension, we sincerely suggest that Statmore reappraise the candor, fairness, and responsibility a lawyer owes to his client. We recommend that Statmore revise his accounting procedures and office management to prevent recurrence of any misconduct. Suspension of Statmore shall be effective September 1, 1984, and shall last for 6 months. Statmore shall make suitable arrangements that his clients' matters pending at and during his suspension shall be suitably protected.

JUDGMENT OF SUSPENSION.